**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CALIFORNIA HUMAN DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 05-1029C<br>(Judge Williams) |

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff California Human Development Corporation (hereinafter "CHDC"), by and through counsel, hereby responds in opposition to Defendants Motion to Dismiss.

**PRELIMINARY STATEMENT**

Defendant moves the Court pursuant to "dismiss the complaint with prejudice for failure to prosecute." (Motion at p.1). In support, Defendant states that during the discovery period of April 27, 2006 through March 16, 2007, "plaintiff has completely refused to participate in discovery." *Id.* Defendant also states that "Plaintiff has failed to appear for noticed depositions twice" and has "provided inadequate discovery responses and failed to supplement them." *Id.* Defendant's motion has no basis in fact or law, grossly distorts the record in this case and should be summarily denied.

Before Plaintiff ever received a single formal discovery request from Defendant, it made three separate document productions commencing on July 26, 2006 (as part of its as part of its Rule 26(A) Initial Disclosures), consisting of 1,303 Bates-stamped documents[1], provided

[1] *See* Exhibit A hereto, bates-stamped document CHDC01303, which is the last page produced as part of its supplement to its initial disclosures on or about November 13, 2006. (*see also*, "Joint Status Report, filed by

defendant with a list of all witnesses with discoverable information,[2] provided defendant with its privilege log[3] and an Excel worksheet summarizing its damages claims.[4] Plaintiff also provided Defendant with a detailed summary of its original legal theories as applied to the facts.[5]

Nor has Plaintiff failed to appear for any properly noticed depositions, as claimed. Indeed, Defendant's counsel has never traveled to or appeared at any of the "ten" depositions he alleges that he twice properly "noticed" for San Francisco, California. He offers no evidence of incurring any expense for travel or court reporter costs for the California depositions. Of the ten witnesses he claims to have properly noticed for deposition in California, one (Robert Scharf) is an attorney working for the U.S. Corps of Engineers in Germany, another (Yolanda Rinaldo) is a retired former volunteer Board member residing in Mexico, and a third (Andrew Haugh) is a former officer now residing in Washington, DC.[6]

Although it was under no legal obligation to do so, Plaintiff undertook extensive efforts to coordinate with the named California residents (none of whom reside in San Francisco and many of whom are not under Plaintiff's control) to obtain common dates on which they would voluntarily appear and a central location for their depositions. Ironically, on the very day that dates (June 18 - 20) and a central location (Fairfield, California) were finally obtained and conveyed to Defendant's counsel, he opted instead to file and pursuant its motion to dismiss for "failure to prosecute." Defendant disclaimed any further interest in the California depositions.

While Defendant also complains of Plaintiff's alleged "inadequate discovery responses,"

---

Defendant on January 16, 2007, Docket No. 18 ("Dkt. #"), acknowledging receipt of supplement to Plaintiff's initial disclosures).

2 *See* Exhibit B hereto, a file copy of Plaintiff's November 13, 2006, supplement to Plaintiff's initial disclosures.

3 *See* Exhibit C hereto, "Plaintiff's List of Privileged or Protected Documents Withheld from Production of Initial Disclosures," dated July 26, 2006.

4 *See* Exhibit D hereto, print-out of Excel worksheets sent to Defendant's counsel in electronic form.

5 *See* Exhibit E hereto, Letter Brief from The Scharf Law Firm, dated April 28, 2004.

6 Defendant could easily have properly noticed and served a subpoena on DC resident Mr. Haugh; however, he has failed to do so, opting instead to pursue this frivolous motion.

at no time did Defendant ever file a motion to compel discovery under Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC"). While Plaintiff believes that its discovery responses were adequate, Plaintiff has served Defendant with further responses and supplemented other responses without Defendant having to file a motion to compel.[7] When the record as a whole is reviewed, there is no basis to claim that Plaintiff failed to participate in discovery to warrant dismissal of its case.[8] There is, ironically, considerable evidence that the delays in this case are mostly attributable to the conduct of the Defendant.

**STATEMENT OF FACTS**

There are no secrets about this case. There was a contractual claim made against the Government agency before Plaintiff brought this suit for breach of contract damages. This case have been briefed before and the relevant documents have been provided to the agency before. When its claim was denied by the agency, CHDC filed its complaint herein on June 23, 2005.

On November 15, 2005, Defendant's original counsel, Jeffrey Pease, sought an enlargement of time of 57 days to respond to the Complaint because, *inter alia*, defendant's counsel needed additional time to receive and review a "litigation report" from agency counsel. (Dkt. # 5). While the parties were trying to reach an agreement to mediate the case, Defendant took close to seven (7) months to file its Answer, which was finally filed on January 17, 2006. (Dkt. # 7).

The Defendant then requested that the parties jointly move for a delay in the filing of the Joint Preliminary Status Report because, *inter alia*, "defendant's counsel will be attending an

---

[7] *See* Exhibits F and G hereto, Plaintiff's Supplemental Answers to Defendant's First Set of Interrogatories, and Supplemental Responses to Defendants' First Request for Production of Documents and First Request for Admissions and Plaintiff's Answers to Defendant's Second Set of Interrogatories and Reponses to Defendant's Second Request for Admissions.

[8] The only documents that were responsive to the formal document requests, that weren't provided more than a year ago in its initial disclosures, were CHDC Board minutes from July 11, 2003 and August 9, 2003.

intensive training course . . . in Columbia, South Carolina" beginning on the week of March 13, 2006. (Dkt. # 8). When the Joint Preliminary Status Report was filed on March 31, 2006, the parties reported that Plaintiff requests alternative dispute resolution and that the Defendant was considering this request. (Dkt. # 10).

On April 27, 2006, the Court issued a scheduling order which set March 16, 2007 as the discovery cut-off. Though both parties were fully aware of the scheduling order in place, both parties agreed to forgo further discovery beyond the initial disclosures and work towards mediation, and so informed the Court.

On November 20, 2006, this Court entered an Order cancelling the November 16, 2006 telephonic status conference, stating: "Instead, the parties shall file a joint status report on or before January 16, 2007, **to inform the Court of their progress in attempts at mediation in this action."** (Dkt. #16)(emphasis supplied). In the Joint Status Report filed by the Defendant on January 16, 2007, Defendant advises the Court, *inter alia,* that:

> "Defendant received plaintiff's anticipated supplement to its initial disclosures on or about November 13, 2006. The parties tentatively scheduled travel to San Francisco during the week of January 8, 2007, for depositions and alternative dispute resolution (if authorized). **However, this date became unworkable [for defendant's counsel] because of an oral argument scheduled before the United States Court of Appeals for the Federal Circuit. In addition, primarily because of unrelated personal obligations, defendant's previous counsel was not able to schedule a trip to California for depositions and alternative dispute resolution (if authorized) between mid-January, and the close of fact discovery on March 16, 2007.**"

(Dkt. #18)(emphasis supplied).

Again, this Court entered an Order that the parties file a joint status report by March 16, 2007, and every 60 days thereafter, "**to inform the Court of their progress in attempts at mediation in this action."** (Dkt. #19)(emphasis added). However, in an abrupt change in strategy after declaring to the Court and Plaintiff's counsel that Defendant could not participate

in mediation or deposition discovery before the then established discovery deadline of March 16, 2007, Defendant's new counsel then refused to discuss mediation and filed a motion to enlarge the discovery period, but to limit fact discovery to 63 days. (Dkt. #20). Defendant's next and only other filing is the pending Motion to Dismiss for Plaintiff's alleged "failure to prosecute." Defendant appears to be attempting to take advantage of its own delays and conduct and, in any event, its motion is legally and factually unsupported.

Clearly, the initial delays in taking formal discovery beyond the initial disclosures, and the supplement to initial disclosures provided by Plaintiff in November 2006, are not the fault of Plaintiff. Initially, both parties agreed to defer any formal discovery (which was agreed would be limited to depositions, as the information normally sought by interrogatories and document requests were exchanged during the initial disclosures) pending an effort to mediate the case. When they agreed to do mediation and depositions in tandem in January, 2007, **it was Defendant's counsel, not Plaintiff's counsel, that advised that Defendant was unable to schedule or attend any out-of-town depositions or mediation in this case within the then established close of discovery, a "black-out" period of three months!**

On February 9, 2007, Defendant, represented by Mr. Robert Bigler, served its first formal discovery request, slightly more than one month before discovery cut-off date. This action was an abrupt departure from Defendant's prior position at status conferences that mediation without further discovery beyond the initial disclosures was the stated goal of both sides.

On February 20, 2007, without conferring with Plaintiff's counsel, Defendant noticed the depositions of Yolanda Rinaldo ("Rinaldo"), Jose Bernardo ("Bernardo") and Christopher Paige ("Paige") for March 6-8 in San Francisco, California. Defendants counsel never sought available dates from Plaintiff or the witnesses. Moreover, Defendant improperly noticed the depositions

of Rinaldo and Bernardo. Neither of these two individuals were ever employees of CHDC. Rinaldo is a retired Board member and, therefore, must be served with a subpoena to compel her depositions in accordance with RCFC 45. Defendant's counsel never served any of these subpoenas (Rinaldo resides in Mexico and could not under any circumstance be compelled to give deposition testimony in California). Nor did Defendant's counsel ever travel to California for the depositions he improperly noticed.

On April 18, 2007, again without consulting with Plaintiff's counsel and obtaining agreement in advance, Defendant mailed a second notice of deposition for the ten (10) witnesses CHDC identified in its Reponses to Defendants First Discovery Requests as possessing knowledge. Once again, these notices were improper because only two (2) of the ten (10) individuals named on the Notice of Deposition are current CHDC employees under the control of Plaintiff. While Defendant alleges in its motion that it sent "draft Subpoenas" for Paige, Rinaldo and Bernardo to "ensure that they attended," these Subpoenas were never properly issued or properly served by a process server at their respective places of residence. Once again, despite Defendant's protestations, no arrangements were apparently made to actually take these depositions and Defendant's counsel has admitted that he never traveled to California to do so. Certainly, no evidence is offered in the motion that there was a true intent or actual expectation that the improperly noticed depositions would proceed.

Clearly, Plaintiff never obstructed or interfered in any way with Defendant's alleged attempt to take these ten (10) depositions. No evidence of obstruction or interference is offered in the motion. Plaintiff filed no motion to quash the notices. Plaintiff filed no motion for a protective order. There is simply no evidence that Plaintiff impeded in any way Defendant's alleged efforts to take the depositions of people he claims to have properly noticed and properly

served with subpoenas. Rather, the opposite is true.

Plaintiff has not purposely failed to provide dates; rather it has actually been working with eight (8) non-party witnesses to obtain their availability and cooperation.[9] **Most of the witnesses Defendant seeks to depose are retired or live outside of California.** There are only two (2) current employees of CHDC, Christopher Paige and Kevin Flores. As discussed earlier, three (3) of the witnesses Defendant is seeking to depose live in Mexico, Germany and in Washington, D.C. Additionally, the witnesses that do reside in California live in a wide circle of two to four hours away from San Francisco. Plaintiff has gone out of its way to arrange these depositions without subpoenas for taking their depositions in their various counties of residence though Plaintiff has no legal obligation to do so. Plaintiff's counsel made a voluntary effort to save resources for both parties, especially considering that Plaintiff is a non-profit organization with limited resources.

During the May 18, 2007 telephonic status conference, Plaintiff's counsel explained the voluntary efforts made by CHDC to schedule all the California depositions in one area at one time. Plaintiffs identified a central location, Fairfield, CA, for the depositions to take place on June 18-20 as most of the witnesses would be in town for CHDC's 40th Anniversary the Thursday of the preceding week. This would allow Defendant to take the depositions at a central location and time where all or most all of the requested witnesses would all be available in one trip to California. This is hardly a failure to participate in discovery, rather it goes beyond what we are required to do by gathering witnesses for be deposed so both parties will not be incur significant travel expenses.

---

[9] On approximately April 25, 2007, Irma Cordova ("Cordova"), CHDC's legal counsel and Deputy CEO, called Defendant's counsel and advised him of the scheduling issues she was working on. Unfortunately, on May 2, 2007, Cordova left her employment as CHDC's legal counsel for unexpected reasons. Due to this sudden event, all efforts had to be picked up where Cordova left off delaying the efforts.

Pursuant to the May 21, 2007 Court Order, on May 24, 2007, Plaintiff narrowed its witness list to six (6) key individuals. Defendant added one more witness. Thus, on June 18-20, Paige, Bernardo, Rinaldo, George Ortiz, Lou Flores, Kevin Flores will all be deposed in Fairfield, California. Further, Plaintiff requested the Defendant to pay for Rinaldo's travel expenses as she resides in Mexico.[10] During the week of May 28 – June 1, 2007, Defendant had a telephone conference with Plaintiff's counsel and offered to pay half of Rinaldo's travel expenses from Mexico.

Counsel is still working on a date and details for Robert Scharf's deposition to take place via video deposition from Germany.

**ARGUMENT**

RCFC 37(a) provides that "a party, upon reasonable notice to other parties and all person affected thereby, may apply for an order compelling disclosure or discovery…" This rule applies to failures to make a disclosure required by RCFC 26(a), a failure to answer an interrogatory submitted under RCFC 33(b)(6), to respond to a request for inspection submitted under RCFC 34. In all cases covered by the rule, "the movant must include a certification that it has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action." If an order under RCFC 37(a) or under RCFC 16(b) is disobeyed, RCFC 37(b) provides for an array of sanctions for failure to comply with any such order. This Court cannot look to RCFC 37(b) as it applies only to an order compelling discovery, rather than an order merely scheduling discovery.

Defendant's counsel admits in its motion that the proper course for Defendant to take if it

[10] *See* email correspondence dated May 24, 2007 attached hereto as Exhibit H.

were dissatisfied with discovery responses is to file a motion to compel. (Motion at p. 6)[11] It is undisputed in this case that Defendant never filed a motion for an order compelling discovery under this rule. It is also undisputed that Defendant's counsel never filed a certification in compliance with RCFC 37. Accordingly, there is no basis for imposing sanctions on Plaintiff under Rule 37(b). Nor, as shown herein, is there any factual basis for the false assertion that "During the discovery period, plaintiff has completely refused to participate in discovery."

Defendant refers to *Colbert v. United States,* 30 Fed. Cl. 95, 97 (1993) in citing RCFC 37(d) and the Court's ability to make such orders in regard to the complete failure of not responding to any discovery requests at all. In the *Colbert* case, Plaintiff did not respond at all to a single discovery request for over fourteen (14) months. The case at issue is distinguishable to *Colbert*, as Plaintiff, CHDC, has participated in discovery.[12] Although Defendant has objected to various Answers and Responses, these have since been supplemented without the need to file a motion to compel.

"Whether dismissal is proper depends upon the weight of evidence that plaintiff has been deliberately prosecuting its case in a dilatory fashion, including the litigation history and any justification offered for plaintiff's or his counsel's conduct." *Link v. Wabash R.R. Co.*, 370 U.S.

---

[11] "In our letter of April 6, 2007, we pointed out that if we did not receive supplemental responses correcting the deficiencies by April 30, 2007, that we would be forced to file a motion to compel.

[12] On July 26, 2006, Plaintiff provided Defendant with its initial disclosure under Rule 26(a). In addition to the other documents required, Plaintiff provided 446 pages of documents. (*See* bates labeled document CHDC00446 attached hereto as Exhibit I). On November 13, 2006 Plaintiff served its supplemental initial disclosures which included bates labeled documents CHDC00447 – CHDC01303. (*See* Exhibit A). On March 30, 2007, Plaintiff served its Response to Defendant's First Set of Interrogatories, and Request for Production of Documents and Admissions. (*See* attached hereto as Exhibit J). Lastly, on May 18, 2007, Plaintiff arranged depositions at a central location, (Fairfield, California) and time (June 18-20) where all most all of the requested witnesses would all be available so only one trip to California would be sufficient. On June 6, 2007, Plaintiff served Supplemental Answers to Defendant's First Set of Interrogatories, and Supplemental Responses to Defendants' First Request for Production of Documents and First Request for Admissions and Plaintiff's Answers to Defendant's Second Set of Interrogatories and Reponses to Defendant's Second Request for Admissions. (*See* Exhibits F & G).

626, 633 (1962); *Kadin Corp. v. United States*, 782 F.2d 175, 177 (Fed. Cir.), cert. denied, 476 U.S. 1171 (1986). Defendant's motion has not shown a deliberate dilatory fashion. Moreover, Defendant blatantly leaves out the core reasons why no discovery requests were ever served by either party from April 27, 2006 to February 9, 2007. Both parties agreed and were focused on a meaningful mediation until new counsel made his appearance. There is nothing in the litigation history that shows Plaintiff or its counsel have failed to participate in discovery or acted in willful disobedience or in a dilatory fashion to purposely draw out this litigation.

## CONCLUSION

There is no basis to claim that Plaintiff failed to participate in discovery or acted in a dilatory fashion to prolong this litigation to warrant dismissal of its case. For the foregoing reasons, Plaintiff, CHDC, respectfully asks this Court to deny Defendant's Motion to Dismiss.

DATE: June 8, 2007

Respectfully submitted,
California Human Development Corporation

/s/ Steven D. Cundra
Steven D. Cundra (D.C. Bar No. 374074)
Roetzel & Andress, LPA
1300 Eye Street, N.W.
Suite 400 East
Washington, D.C. 2005
Telephone: (202) 625-0660
Facsimile: (202) 338-6340

*COUNSEL FOR PLAINTIFF, CALIFORNIA HUMAN DEVELOPMENT CORPORATION*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of April, 2007, I electronically filed Plaintiff's Response in Opposition to Defendant's Motion to Dismiss and a copy of the foregoing was served via the Court's CM/ECF to all parties of record.

/s/ Steven D. Cundra
Steven D. Cundra (D.C. Bar No. 374074)
Roetzel & Andress, LPA
1300 Eye Street, N.W.
Suite 400 East
Washington, D.C. 2005
Telephone: (202) 625-0660
Facsimile: (202) 338-6340