IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CALIFORNIA HUMAN DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 05-1029C<br>(Judge Williams) |

DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY REGARDING ANY ALLEGED TAKING

Pursuant to Rule 16 of the Rules of the United States Court of Federal Claims ("RCFC"), the United States respectfully requests that this Court exclude any testimony regarding any alleged taking by any of plaintiff's witnesses. Plaintiff California Human Development Corporation ("CHDC") alleges that the Administration for Children and Families ("ACF") agreed to pay all excess construction and other costs relating to a Head Start/Early Head Start facility if CHDC relinquished the program. Complaint, ¶ 4. While plaintiff has not expressly alleged a takings claim in its complaint, CHDC is not entitled to any damages pursuant to a takings claim because it entered into an agreement with the Government to voluntarily relinquish the Head Start/Early Head Start program. As a result, CHDC is limited to, at most, a contractually based remedy. Remedies for alleged infringement of any rights established contractually generally lie in contract, not the Fifth Amendment, as it is the terms of the contract that govern the parties' respective rights and obligations. Sunrise Village Mobile Home Park, L.C. v. United States, 42 Fed. Cl. 392, 404 (1998) ("if the government's actions allegedly

breached a contract, the appropriate remedy is a breach of contract claim, not a claim for compensation pursuant to the Takings Clause"). As plaintiff has alleged a breach of contract claim, the defendant, therefore, respectfully requests that any testimony regarding any alleged taking be excluded.

STATEMENT OF FACTS

CHDC received a grant from the Government to construct a Head Start/Early Head Start facility. During the construction of the facility, CHDC spent funds in excess of the amount of the original grant. CHDC attempted to obtain reimbursement from the Government for these excess costs, but the requests were denied.

In July of 2003, CHDC decided to relinquish the Head Start/Early Head Start program. In return for CHDC's agreement to relinquish the program, the Government agreed not to issue a disallowance letter.[1] CHDC's relinquishment of the Head Start/Early Head Start program is discussed in a series of letters between the plaintiff and defendant. A1-2.[2]

In a letter dated July 24, 2003 and signed by Jerry Gomez and Martin Tom, the Government stated that:

> if CHDC formally relinquishes its grants, ACF will not issue or in any other manner pursue the disallowances . . . nor will a termination proceeding be required . . . All matters relating to the transfer of the grants will then be addressed in a close out period. All reasonable and necessary close out costs will be fairly negotiated and charged to a close out grant, and all issues relating to the transfer of facility title, licenses, leases, lien claims, and other transfer issues, will also be negotiated and resolved in the ordinary course of the close out.

---

[1] While disallowance procedures offer several opportunities for comment and appeal by the grantee, if the grantee receives a final disallowance, the disallowed amount is money that would be owed back to the Federal Government.

[2] "A__" refers to a page in the appendix attached to this motion.

A1.

CHDC paraphrases this language in its complaint claiming that "reasonable and necessary cots would be fairly negotiated and paid" even though the Government's letter does not state that the costs would be paid. Complaint, ¶ 5. In any event, it is this alleged agreement that is the basis of plaintiff's breach of contract action. Christopher Paige, of CHDC, confirmed that the Government's letter "was a pretty good summary of what [ACF and CHDC] agreed to." A4; A6 (former CHDC Chairman Jose Bernardo referred to the Government's letter as the "close out agreement."). On July 25, 2003, CHDC responded with a letter signed by Jose Bernardo essentially accepting the Government's offer and agreeing to relinquish the Head Start and Early Head Start programs.[3] A2.

CHDC then submitted a request for ordinary closing costs of $196,939 and $484,585 in extraordinary closing costs for a total request of $681,525, which is the subject of this lawsuit. Of these claims, there is no dispute that the Government paid CHDC a total close out amount of $137,532 which includes $104,108 in ordinary close out costs and $33,424 in extraordinary close out costs.

ARGUMENT

I. Any Alleged Takings Claim Should Be Excluded

The Takings Clause of the Fifth Amendment mandates "just compensation" when the

[3] CHDC's letter stated in part that on July 25, 2003, CHDC's Board of Directors voted "to relinquish the Head Start and Early Head Start grants." A2. The letter also included a quote from the Government's letter of July 24, 2003 stating that "'All reasonable and necessary close out costs will be fairly negotiated and charged to a close out grant, and all issues related to the transfer of the facility, title, licenses, leases, lien claims and other transfer issues' will also be negotiated and resolved fairly." A2.

Federal Government appropriates private property for "public use." U.S. Const. Amend V; Bernaugh v. United States, 38 Fed. Cl. 538, 542 (1997), aff'd, 168 F.3d 1319 (Fed. Cir. 1998) (table). Before a party may recover compensation pursuant to the Fifth Amendment for a taking, under either a physical invasion (per se) or regulatory taking theory, it must establish a compensable property interest; i.e., a specific interest in physical or intellectual property. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014 (1992); Kaiser Aetna v. United States, 444 U.S. 164, 179-80 (1979).

The Court of Appeals for the Federal Circuit and its predecessor "has cautioned against commingling takings compensation and contract damages." Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001). "In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." Hughes Communications, 271 F.3d at 1070 (quoting Sun Oil Co. v. United States, 215 Ct. Cl. 716, 769-70, 572 F.2d 786, 818 (1978)); see J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 46, 411 F.2d 1246, 1249 (1969); Transpace Carriers, Inc. v. United States, 27 Fed. Cl. 269, 274 (1992); Marathon Oil Co. v. United States, 16 Cl. Ct. 332, 338-39 (1989).

Remedies for alleged infringement of any rights established contractually generally lie in contract, not the Fifth Amendment, as it is the terms of the contract that govern the parties' respective rights and obligations. Sun Oil, 215 Ct. Cl. at 769-70, 572 F.2d at 818; see Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 703 n.27 (1949) (if there is contract remedy, party cannot pursue takings claim in this Court); Sunrise Village Mobile Home Park, L.C. v. United States, 42 Fed. Cl. 392, 404 (1998) ("if the government's actions allegedly breached a contract, the appropriate remedy is a breach of contract claim, not a claim for

compensation pursuant to the Takings Clause"). As noted by the Court, when a party alleges "an entitlement to compensation created by a contractual arrangement, any right to compensation depends entirely on the enforceability of that agreement." Howard v. United States, 31 Fed. Cl. 297, 315 n.14 (1994) (citing Marathon Oil Co. v. United States, 16 Cl. Ct. 332, 338- 39 (1989) (quoting Sun Oil, 215 Ct. Cl. at 770, 572 F.2d at 818).

While plaintiff does not include a takings claim in its complaint, it has alleged in response to requests for admissions that it contends that a taking occurred when CHDC voluntarily relinquished its Head Start/Early Head Start program.[4] To the extent that plaintiff contends that it can recover under a "takings" claim, it is incorrect. Even assuming that CHDC can establish that the Head Start/Early Head Start grants qualify as a compensable property interest, the Government did not "take" CHDC's property. Rather, CHDC voluntarily entered into an agreement in which it agreed to relinquish the Head Start/Early Head Start grants in exchange for the Government's agreement not to issue a draft disallowance letter. A2. As a result, plaintiff cannot claim that a taking occurred and is limited to only the available breach of contract remedy, if any.

## CONCLUSION

For the reasons given above, the Court should exclude any testimony regarding plaintiff's alleged takings claim.

[4] Plaintiff's complaint does not alleged or even mention a takings claim, but in response to the Government's Second Set of Requests for Admissions, Request No. 21, plaintiff responded that it had alleged a takings claim in its complaint and also cited to the parties Joint Preliminary Status Report of March 31, 2006. However, the Joint Preliminary Status Report also does not mention a takings claim.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

s/ Robert C. Bigler
ROBERT C. BIGLER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., NW
Washington, D.C. 20530
Tele: (202) 307-0315
Fax: (202) 514-8624

August 12, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this _12th_ day of August 2008, a copy of the foregoing "DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF ANY ALLEGED TAKING" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Robert C. Bigler